| | | |
|---|---|---|
| DEBORAH SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-368-TLS |
| | ) | |
| IRON WORKERS DISTRICT COUNCIL | ) | |
| OF SOUTHERN OHIO & VICINITY | ) | |
| PENSION TRUST, and GARLAND | ) | |
| SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

On August 3, 2017, Plaintiff Deborah Smith filed a state court Complaint [ECF No. 5] against Defendants Iron Workers District Council of Southern Ohio & Vicinity Pension Trust (the Fund) and Garland Smith. This case was removed to federal court [ECF No. 1] on August 25, 2017. On August 31, 2017, the Fund filed a Motion for Judgment on the Administrative Record [ECF No. 7], to which the Plaintiff responded on April 30, 2018 [ECF No. 44], and the Fund replied on May 11, 2018 [ECF No. 46]. The Plaintiff filed an Amended Complaint with leave of Court on March 27, 2018 [ECF No. 37], which clarified that she was asserting both a claim under the Employee Retirement Income Security Act of 1974, as amended (ERISA), 29 U.S.C. § 1002(2)(A) as well as a state law claim for conversion. The Fund filed a Motion to Dismiss [ECF No. 42] the Plaintiff's state law conversion claim on the grounds that the claim was preempted. The Plaintiff responded on April 24, 2018 [ECF No. 43], and the Fund replied on May 1, 2018 [ECF No. 45]. Subsequently, the Fund filed a Motion to Transfer Case [ECF No. 47] on June 6, 2018, arguing that the Southern District of Ohio is a more appropriate forum. The

Plaintiff responded [ECF No. 48] on June 19, 2018, and the Fund replied [ECF No. 49] on June 26, 2018. These issues are now fully briefed and ripe for review.

## BACKGROUND

The Fund is an "employee pension benefit plan" within the meaning of ERISA § 2(2)(A) and a "multiemployer plan" within the meaning of ERISA § 2(37)(A). In January 2013, Garland Smith retired and elected to receive a single life annuity payment option (the Plan), terminating upon his death. At the time of his election, Smith and the Plaintiff were married. Smith's Plan provided that if Smith died prior to receiving sixty monthly payments, his named beneficiary would receive the balance of those payments, but would not be entitled to any further payments. However, if Smith died after sixty payments had been tendered, the named beneficiary would not receive any payments.

Smith submitted an application for benefits pursuant to the Plan on January 18, 2013, and his benefits commenced on February 1, 2013. In January 2016, Smith and the Plaintiff divorced. On February 29, 2016, after dissolution of the marriage, the Fund received a proposed domestic relations order (DRO); however, the Fund found that the DRO was non-compliant with ERISA and the Fund's policies. By letter dated May 23, 2016, the Fund advised the Plaintiff and Smith that it would segregate the forty percent allotted to the Plaintiff for eighteen months or until it was presented with a qualified DRO. If the Plaintiff and Smith did not submit a qualified DRO within the eighteen months, the segregated amount would be paid to Smith.

On May 18, 2016, the Plaintiff inquired whether a DRO that provided for continued payments to her beneficiaries if she predeceases Smith, even after the first sixty payments had been tendered, would be a qualified DRO. Notwithstanding this inquiry, on May 24, 2016, the

Plaintiff submitted a DRO that did not include such a provision, which the Fund determined was a qualified DRO and issued a letter of compliance on June 1, 2016. On June 2, 2016, the Plaintiff again inquired as to whether a DRO that provided for continued payments to her beneficiaries even if she died after the first sixty payments would be a qualified DRO. The Fund responded by letter dated June 9, 2016, that "an order containing such a provision would fail to be a complying order under the Fund's procedure." (A.R. 10052, ECF No. 7-1.) In November 2016, the Whitley Circuit Court issued the DRO at issue in this case [ECF No. 5 at 11–14], which the Plaintiff submitted on November 18, 2016. This DRO included the provision regarding the Plaintiff's beneficiaries despite the Fund's advisement that the DRO would be non-compliant. Specifically, the DRO provides that the Plaintiff is to receive forty percent of Smith's monthly payments and that if the Plaintiff predeceases Smith, her beneficiaries or her estate will continue to receive forty percent of the payments. (*See* DRO at 2–3.) However, if the Plaintiff dies after Smith, her interest in the Plan payments will cease at the end of the first sixty months, and no further payments would be tendered to her beneficiaries. (*Id.* at 3.) The Fund responded by letter dated December 5, 2016, that the modified DRO was not qualified because it conflicted with the terms of the Plan.

Through counsel, the Plaintiff appealed the Fund's decision on January 31, 2017, including the Fund's decision to segregate the Plaintiff's forty-percent entitlement. The Fund responded on February 3, 2017, maintaining its position that the November 2016 DRO was unqualified, denying the Plaintiff's request for an "expedited appeal," and inquiring whether the Plaintiff would like her appeal heard at the upcoming Trustees' meeting on March 14, 2017. The Plaintiff did not respond prior to March 14, 2017, and her appeal therefore was not heard on that date. Instead, the Plaintiff's appeal was heard at the Trustees' meeting on May 11, 2017, and,

after consideration, the Trustees, as Plan administrators, denied the Plaintiff's appeal. Along with a denial letter explaining their decision, the Trustees advised the Plaintiff of her right to file a lawsuit under § 502(a) of ERISA.

On August 3, 2017, the Plaintiff filed her claim against the Fund requesting "equitable relief" in the form of damages as well as asserting a claim for conversion in violation of Indiana Administrative Code (IAC) § 34-24-3-1. With leave of Court, the Plaintiff amended her Complaint on March 27, 2018. In her Amended Complaint, the Plaintiff alleges violations of § 502(a)(1)(B) of ERISA and IAC § 34-24-3-1.

In its Motion for Judgment on the Administrative Record,[1] the Fund argues that the Court must review the Trustees' decision under an "arbitrary and capricious" standard and therefore may review only the record that was before the Trustees. Thus, the Fund argues, because the Administrative Record has been made of record in this case, judgment is appropriate as to the Plaintiff's ERISA claim. The Fund also argues that the Court should dismiss the Plaintiff's conversion claim because it is preempted by ERISA.

## ANALYSIS

### A.    Motion to Transfer Case

The Court turns first to the Fund's Motion to Transfer Case to the Southern District of Ohio on the basis of forum non conveniens. The Plaintiff may demonstrate proper venue under ERISA's venue provision, 29 U.S.C. § 1132(e)(2), or under the federal venue statute, 28 U.S.C. § 1391(b). *See Varsic v. U.S. Dist. Court for Cent. Dist. of Cal.*, 607 F.2d 245, 248 (9th Cir.

---

[1] The Court found that, despite the Plaintiff's amendments to her Complaint, the Fund's Motion was not moot. (*See* ECF No. 38.)

1979) ("The ERISA venue provision is intended to expand, rather than restrict, the range of permissible venue locations."); 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3825 (4th ed.) ("The ERISA venue provision is not exclusive."). Under ERISA, venue is proper in a district court of the United States: (1) "where the plan is administered," (2) "where the breach took place," or, (3) "where a defendant resides or may be found." § 1132(e)(2). Under the federal venue statute, venue is proper in a district court of the United States: (1) "in which any defendant resides, if all defendants reside" in the same State, (2) "in which a substantial part of the events or omissions giving rise to the claim occurred," or if (1) or (2) do not apply, then (3) "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." § 1391(b). Venue can be proper in more than one district. *See Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009).

The venue in which "the breach took place" means "the place where pension benefits are received, which is plaintiff's residence . . . ." *Macdonald v. Assoc. for Restorative Dentistry Ltd. Pension Plan*, No. 2:16-cv-168, 2016 WL 4506872, at *2 (N.D. Ind. Aug. 29, 2016); *see also Strickland v. Trion Grp., Inc.,* 463 F. Supp. 2d 921, 925–26 (E.D. Wis. 2006); *Cole v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 225 F. Supp. 2d 96, 98 (D. Mass. 2002); *Wallace v. Am. Petrofina, Inc.*, 659 F. Supp. 829, 832 (E.D. Tex. 1987); *Bostic v. Ohio River Co. (Ohio Div.) Basic Pension Plan*, 517 F. Supp. 627, 636–37 (S.D. W. Va. 1981). In the present case, the Plaintiff resides in the Northern District of Indiana; as such, that is the district in which the Plaintiff expected to receive benefits. Thus, the Court concludes that the alleged breaches took place in the Northern District of Indiana. Accordingly, venue is proper in the Northern District of Indiana pursuant to the "breach" provision of 29 U.S.C. § 1132(e)(2).

Title 28 of the United States Code, § 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The movant bears the burden of showing that the transferee court is clearly more convenient. *K & F Mfg. Co. v. W. Litho Plate & Supply Co.*, 831 F. Supp. 661, 664 (N.D. Ind. 1993). The decision to transfer a case pursuant to § 1404(a) ultimately lies within the transferor court's discretion. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) ("The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge.").

The Court balances the following interests in analyzing convenience: "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the witnesses, and (5) the convenience of the parties of litigating in the respective forums." *Schumacher v. Principal Life Ins. Co.*, 665 F. Supp. 2d 970, 977 (N.D. Ind. 2009). The analysis regarding the interests of justice focuses on the efficient administration of the court system. *See Coffey*, 796 F.2d at 219–20. A transfer should not be granted if it merely shifts convenience from one party to another. *K & F Mfg. Co.*, 831 F. Supp. at 664. In this case, the Fund, as the party moving for transfer, "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 220.

The Fund argues that the Southern District of Ohio is a more appropriate venue to litigate this dispute because (1) Ohio was the situs of material events; (2) the sources of proof are located in Ohio; (3) Ohio is not inconvenient to the Plaintiff; and (4) Ohio is more convenient for potential witnesses. The Fund also argues that transfer would be in the interests of justice

regardless of the convenience of the parties because the Southern District of Ohio statistically provides a speedier path to resolution of the dispute.

First, the Court is not persuaded by the Fund's "interests of justice" argument. The Court is disposing of the Fund's dispositive Motions concurrently with its Motion to Transfer. At this point in the litigation, the Court is skeptical that this case could be resolved any more efficiently by transfer to another district.

The Fund argues that the situs of the material events "weighs substantially and solely" in favor of transfer because at issue in this case is a decision that was made in Ohio. The Court is not persuaded by this argument. The Court has already determined that venue in this district is proper because the alleged breach of the Plan occurred in this district. At minimum, it can be said that material events related to the instant case occurred in both districts, and this factor therefore weighs neutrally in the Court's analysis. The Court is also not persuaded that the location of sources of proof militate in favor of transfer. In filing its Motion for Judgment on the Administrative Record, the Fund asserts that all of the evidence necessary to resolve the case is already before the Court. The location of the original documents and the witnesses to the creation of those documents are irrelevant to the Court's review of the record and determination of the merits of the case. Nor is the Court persuaded that any overall convenience to the parties or their witnesses will be served by transfer. As to the witnesses, neither party asserts that any witnesses are necessary to the resolution of this case. Moreover, the Fund acknowledges that the Northern District of Indiana is a more convenient venue for the Plaintiff. Other than the reasons cited above, which the Court does not find persuasive, the Fund does not offer any reasons that demonstrate that the convenience gained by the Fund by litigating in the Southern District of Ohio outweighs the convenience lost to the Plaintiff. "Where the parties each reside in different

states, there is no choice of forum that will avoid imposing inconvenience on one or the other, and 'the tie is awarded to the plaintiff.'" *Bethany Lowe Designs Inc. v. ESC Trading Co.*, No. 10-4052, 2011 WL 134058, at *2 (C.D. Ill. Jan. 14, 2011) (quoting *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003)). Therefore, the Court does not find that the Southern District of Ohio is "clearly more convenient," and the Court will deny the Fund's Motion to Transfer.

**B.      Motion for Judgment on the Administrative Record**

*1.      Procedure*

The Plaintiff's first argument regarding the Fund's Motion for Judgment on the Administrative Record is that it is procedurally improper because it is not a recognized motion under the Federal Rules of Civil Procedure. Rather, such a motion is a creature of the Rules of the United States Court of Federal Claims. The Plaintiff argues that the proper procedural vehicle would have been a motion for summary judgment, citing *Evanston Community Consolidated School District Number 65 v. Michael M.*, 356 F.3d 798, 802 (7th Cir. 2004).[2] The Court previously determined that the Fund's Motion was not a motion for summary judgment. (*See* ECF No. 10.) Thus, the Plaintiff asserts, "[t]he Court would be well within its discretion to decline to rule on the Fund's motion and order the Fund to file a proper summary judgment motion in compliance with Federal Rule of Civil Procedure 56." (Pl. Resp. to Def. Mot. for Judgment on the Admin. Record at 5, ECF No. 44.) However, the sua sponte determination that the Motion for Judgment was not a summary judgment motion was for the purposes of clarifying briefing deadlines and says nothing regarding the procedural effect of the Motion. And, as noted

---

[2] While *Evanston* does indeed state that the proper procedural vehicle is a motion for summary judgment, the Seventh Circuit considered the issue in light of review standards, not whether a motion titled as one for judgment on the administrative record may proceed.

below, the Court is limited to the evidence that was before the Plan administrators, and the Plaintiff has not argued that there is any evidence to be introduced as to the substance of her § 502(a) claim that is not already part of the record. The Court sees no benefit in requiring the Fund to re-file the substance of its Motion in the form of a summary judgment motion.[3] The Plaintiff has produced no authority within the Seventh Circuit in which a court declined to review a motion for judgment on the administrative record on such a procedural technicality. To the contrary, courts in the Seventh Circuit consider such motions on their merits. *See, e.g.*, *Dorris v. Unum Life Ins. Co. of Am.*, No. 16-CV-508, 2018 WL 1993186 (S.D. Ill. Apr. 27, 2018); *Gittings v. Tredegar Corp.*, 713 F. Supp. 2d 746 (N.D. Ill. 2010); *Hjortness ex rel. Hjortness v. Neenah Joint Sch. Dist.*, No. 05-C-648, 05-C-656, 2006 WL 1788983 (E.D. Wis. June 27, 2006). Nor is there any prejudice to the Plaintiff as she has fully responded to the merits of the Fund's argument. Thus, the Court will not elevate form over substance and require the Fund to file the same motion under a different caption, and it will proceed to consider the Fund's Motion on the merits.

### 2.    *Standard of Review*

The parties dispute the applicable standard of review. The Fund argues that the Court should review the Trustees' decision under an "arbitrary and capricious" standard whereas the Plaintiff argues that the Trustees' decision is subject to a de novo review.

---

[3] Indeed, other courts treat motions for judgment on the administrative record as summary judgment motions. *See, e.g.*, *Flanagan v. First Unum Life Ins.*, 170 F. App'x 182, 184 (2d Cir. 2006); *Gaud-Figueroa v. Metro. Life Inc. Co.*, 771 F. Supp. 207, 210 (D. Conn. 2011). In fact, motions for judgment on the administrative record have been described as "the alternative to summary judgment in ERISA denial of benefits cases. *See Benson v. Assurity Life Ins. Co.*, No. 1:03-CV-817, 2004 WL 2106637, at *1 (W.D. Mich. June 16, 2004) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998)).

"The standard of judicial review in civil actions under 29 U.S.C. § 1132(a)(1)(B) depends upon the discretion granted to the plan administrator in the plan documents." *Semien v. Life Ins. Co. of N.A.*, 436 F.3d 805, 810 (7th Cir. 2006) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "[A] denial of benefits challenged under § 1153(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber*, 489 U.S. at 115. Where the plan administrator has such discretionary authority, a court must review the decision under an "arbitrary and capricious" standard.

The Plaintiff argues that the primary issue in the case is not the interpretation of the pension plan but rather is whether the DRO is qualified—a matter of statutory interpretation. Thus, the Plaintiff argues, "[r]egardless of whether the Plan contains the discretionary language, the Court reviews de novo questions of law" such as "whether a domestic relations order[] is a Qualified Domestic Relations Order . . . for purposes of ERISA." *Marker v. Northrop Grumman Space & Missions Sys. Corp. Salaried Pension Plan*, No. 04 C 7933, 2006 WL 2873191, at *5 (N.D. Ill. Oct. 4, 2006) (citing *Hogan v. Raytheon, Co.*, 302 F.3d 854, 856 (8th Cir. 2002)); *see also Branco v. UFCW-N. Cal. Employers Joint Pension Plan*, 279 F.3d 1154, 1158 (9th Cir. 2002); *Brown v. Cont'l Airlines, Inc.*, 647 F.3d 221, 226 (3d Cir. 1999).

Here, the disagreement lies in whether the DRO contains a provision that conflicts with the Plan. The Trustees of the Plan, as its administrators, have an obligation to act in accordance with the Plan documents. *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 286–87 (2009) ("ERISA provides no exception to the plan administrator's duty to act in accordance with plan documents."). Thus, the Trustees have an obligation to determine whether the DRO is qualified in accordance with the Plan. The Plaintiff argues that this requires

interpretation of the DRO, and the Fund argues that this requires an interpretation of the Plan. The provision of the DRO that is at issue states:

> If the Alternate Payee's death occurs before the Participant's death, the monthly amount assigned to the Alternate Payee pursuant to Section 7 of this Order shall be paid to Alternate Payee's named beneficiary(ies) or to Alternate Payee's estate if no beneficiary has been named; however, all payments to Alternate Payee's beneficiary(ies) shall cease upon Participant's death if Participant's death occurs after the five year guaranteed payment period.

(*See* DRO, ECF No. 1-3.) The Court finds that there is no question as to what the DRO requires. The DRO permits the Alternate Payee (the Plaintiff) to name a beneficiary to receive the allotted benefits subsequent to the Plaintiff's death but prior to either the sixtieth monthly payment to Smith or Smith's death, whichever comes later. What is not clear is whether this provision conflicts with the Plan. The parties do not argue that there are any other statutory requirements regarding the DRO that the Court must interpret. Therefore, it is the interpretation of the Plan that is at issue, not the interpretation of the DRO.

### 3.      *Whether the Trustees as Plan Administrators Had Discretionary Authority*

The Court turns to whether the Plan granted discretionary authority to the Trustees so that the Court must review their decision under the arbitrary and capricious standard. "In order to lower the level of judicial review from de novo to arbitrary and capricious, 'the plan should clearly and unequivocally state that it grants discretionary authority to the administrator.'" *Semien*, 436 F.3d at 810 (quoting *Perugini-Christen v. Homestead Mort. Co.*, 287 F.3d 624, 626 (7th Cir. 2002)). "[C]onferral of discretion is not to be assumed." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000) "[T]he presumption of plenary review is not rebutted by the plan's stating merely that benefits will be paid only if the plan administrator determines they

are due, or only if the applicant submits satisfactory proof of his entitlement to them." *Id.*

(quoting *Herzberger*, 205 F.3d at 331).

The Fund points to several provisions in the Plan that it claims demonstrate a clear grant of discretionary authority. The relevant language includes:

> The Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case and of the application and interpretation of this Plan, and the decisions of the Trustees shall be final and binding on all parties.

> Wherever in the Plan the Trustees are given discretionary powers, the Trustees shall exercise such powers in a uniform and nondiscriminatory manner.

(A.R. 10258.)

Relating to appeals:

> The decision by the Board of Trustees on appeal shall be final, binding and conclusive and will be afforded the maximum deference permitted by law unless found by a court of competent jurisdiction to be arbitrary and capricious.

(A.R. 10261.)

Regarding domestic relations procedures:

> You should remember that, if an Order is ambiguous, the Plan documents give the Plan Administrator the final authority to interpret and construe the Order.

(A.R. 10032.)

In a section titled "Sole Determination by Trustees," the Plan states:

> Only the Board of Trustees has the authority and discretion to determine your eligibility for benefits and your right to participate in the Pension Plan. The Board's decisions will not be changed by a judge unless the Trustees are found to have abused their discretion. The Trustees have the authority, in their sole discretion, to exercise all the powers specified in the legal Plan Documents. The Trustees may, in their sole discretion, change or end the Plan in any manner or at any time permitted by the provisions of the Trust Agreement.

(A.R. 10173.)

The Court finds that the Plan clearly affords the Trustees discretion as to its interpretation and therefore certainly exhibits the requisite "minimum clarity that a discretionary determination is envisaged." *See Herzberger*, 205 F.3d at 331. Thus, the Court finds that the appropriate standard of review of the Trustees' decision is the arbitrary and capricious standard.

**4.      *Arbitrary and Capricious Standard***

The "arbitrary and capricious" standard is a deferential standard of review. *Hess v. Hartford Life & Acc. Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001). "Under the arbitrary and capricious standard, a plan administrator's decision should not be overturned as long as (1) 'it is possible to offer a reasoned explanation based on the evidence, for a particular outcome,' (2) the decision 'is based on a reasonable explanation of relevant plan documents,' or (3) the administrator 'has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.'" *Id.* (quoting *Exbom v. Cent. States, SE & SW Areas Health & Welfare Fund*, 900 F.2d 1138, 1142–43 (7th Cir. 1990)).

In conducting this inquiry, the Court must limit its review to the evidence that was before the administrator when it made its decision. *See Militello v. Cent. States, SE & SW Areas Pension Fund*, 360 F.3d 681, 686 (7th Cir. 2004); *Hess*, 274 F.3d at 462; *Perlman v. Swiss Bank Corp. Comp. Disability Prot. Plan*, 195 F.3d 975, 981–82 (7th Cir. 1999). The evidence that was before the Trustees in the instant case is of record with the Court. The decisions with which the Plaintiff takes issue and to which the Court now turns are: (1) the denial of the Plaintiff's claim for benefits; (2) the segregation of the Plaintiff's assigned portion of Smith's pension benefit; and (3) resolution of the Plaintiff's appeal at

a May 9, 2017, meeting rather than on the requested expedited basis. In her briefing, the

Plaintiff does not address the third issue, and the Court agrees with the Fund that the

Trustees timely considered the Plaintiff's appeal.


5.      *Whether the Trustees' Decision That the DRO was not Qualified was Arbitrary and Capricious*

ERISA's statutory scheme "is built around reliance on the face of written plan

documents." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). In distributing plan

benefits, an administrator has a duty to follow the plan documents. *See Kennedy v. Plan Adm'r

for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 286 (2009) ("ERISA provides no exception to the

plan administrator's duty to act in accordance with plan documents."). If a DRO is qualified

(QDRO), the plan administrator is obligated to comply with its terms. *See Blue v. UAL Corp.*,

160 F.3d 383, 385 (7th Cir. 1998) ("Compliance with a QDRO is obligatory. 'Each pension plan

*shall* provide for the payment of benefits in accordance with the applicable requirements of any

qualified domestic relations order.'") (citing 29 U.S. C. § 1056(d)(3)(A)). However, "[a]part

from a few enumerated exceptions, a plan fiduciary must 'discharge his duties with respect to a

plan solely in the interest of the participants and beneficiaries.'" *Boggs v. Boggs*, 520 U.S. 833,

845 (quoting 29 U.S.C. § 1104(a)(1)).

One of the statutory provisions aimed at protecting beneficiaries makes pension plan

benefits generally non-assignable. *See* 29 U.S.C. § 1056(d)(1). A QDRO presents a statutory

exception to this general rule. *See* 29 U.S.C. § 1056(d)(3)(A). In so doing, the QDRO exception

"recognize[s] certain pension plan community property interests of nonparticipant spouses and

dependents" and "give[s] enhanced protection to the spouse and dependent children in the event

of divorce or separation." *Boggs*, 520 U.S. at 846. The Court first looks to the Trustees' decision that the Plaintiff's DRO containing the assignment provision was not qualified.[4]

"A QDRO is a type of domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan." *Id.* (citing § 1056(d)(3)(B)(i)). "To the extent, therefore, that a state court issues a QDRO that allows a violation of the anti-alienation provisions of an ERISA pension plan, ERISA's preemption provisions are inapplicable and effect must be accorded the domestic relations order." *LeTourneau v. Gen. Motors Corp.*, 24 F. App'x 332, 335 (6th Cir. 2001). "A domestic relations order, in turn, is any judgment, decree, or order that concerns 'the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant' and is 'made pursuant to a State domestic relations law . . . .'" *Boggs*, 520 U.S. at 846 (quoting § 1056(d)(3)(B)(ii)). A DRO must meet certain statutory requirements to be qualified. The DRO must clearly specify:

> (i) the name and last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
>
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
>
> (iii) the number of payments or period to which such order applies, and
>
> (iv) each plan to which such order applies.

---

[4] In her Response to the Fund's Motion to Dismiss, the Plaintiff argues that whether a DRO is qualified is a question of fact that must be taken as true for the purposes of the Motion. The Court disagrees. *See Branco v. UFCW-N. Cal. Employers Joint Pension Plan*, 729 F.3d 1154, 1158 (9th Cir. 2002) ("Whether the order constitutes a valid QDRO under ERISA is a question of law . . . .") (quotation omitted); *see also Sun Life Assurance Comm. of Can. v. Jackson*, No. 3:14-cv-41, 2016 WL 4184444, at *4 (S.D. Ohio Aug. 5, 2018) ("The issue of whether the Decree is a QDRO is a threshold question of law . . . .") (citations omitted).

§ 1056(d)(3)(C). Moreover, the DRO is qualified only if it:

> (i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

> (ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

> (iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

§ 1056(d)(3)(D).

The only dispute regarding whether the Plaintiff's DRO was qualified under the statute is whether the DRO requires the creation of a new type or form of benefit that is not provided by the Plan. *See* 29 U.S.C. § 1056(d)(3)(D)(i). The Fund argues that the Plan does not permit the Plaintiff, or any other alternate payee in similar circumstances, to name a beneficiary to receive benefits after her death. The Trustees reasoned that permitting the Plaintiff to name a beneficiary was a right that was greater than that awarded to Smith as the plan participant.

The Trustees' reasoning for rejecting the Plaintiff's DRO is as follows: the Plan provides for a minimum term of sixty months during which payments will be made to Smith or his beneficiaries. Thus, the Plan provides that if Smith dies prior to the expiration of the guaranteed sixty-month period his named beneficiary will continue to receive benefits until the sixtieth payment. However, if Smith dies after the expiration of the guaranteed sixty-month period, his beneficiary will not receive any benefits. For the purposes of ERISA, the Plaintiff is a beneficiary. As such, if Smith dies prior to the expiration of the sixty-month period, she would continue to receive her allotted portion of benefits until the sixtieth payment. If Smith dies after the expiration of the sixty-month period, however, all payments to the Plaintiff would cease at the time of his death. If the

Plaintiff were able to name a beneficiary who would receive her allotted portion of benefits in the event of her death, that beneficiary would be able to collect benefits after the expiration of the sixty-month period—so long as Smith is alive—whereas Smith's named beneficiary would have no right to payments past the sixty-month period in the event of Smith's death. Thus, by being able to name a beneficiary that could receive payments past the sixty-month period in the event of the Plaintiff's death, the Plaintiff would be exercising a right not provided to Smith. Therefore, the Trustees reasoned, the DRO attempts to confer a "type or form of benefit, or any option, not otherwise provided under the plan" in violation of 29 U.S.C. § 1056(d)(3)(D)(i).

The Trustees' logic is critically flawed. The language of 29 U.S.C. § 1056(d)(3)(D)(i) "only bars a QDRO from requiring a plan to affirmatively afford a type or form of benefit not established under that plan." *DeRazio v. Hollister, Inc.*, 636 F. Supp. 2d 1045, 1078 (E.D. Cal. 2009). Circumstances under which courts have held that a QDRO required a plan to afford a type or form of benefit not otherwise established include requiring a lump sum payment instead of payment over a period of years, see *Patton v. Denver Post Corp.*, 326 F.3d 1148, 1152 (10th Cir. 2003), or requiring early payment of benefits, see *Dickerson v. Dickerson*, 803 F. Supp. 127, 134 (E.D. Tenn. 1992). These are not the circumstances here. The DRO does not change the type or the form of payments made: payments are still to be made in monthly installments, with a guaranteed period of sixty months, and will still cease upon Smith's death if he were to die after the guaranteed sixty-month period.

Nor does the DRO provide an "option" not otherwise provided under the Plan. The Fund does not take issue with the Plaintiff's naming of a beneficiary. (*See* Mot. for

Judgment on the Admin. R. 17). In fact, one of the Fund's proposed solutions to the disagreement allowed the DRO to provide that the Plaintiff could name a beneficiary. (*Id.*). Rather, the Fund takes issue with the fact that the Plaintiff's named beneficiary could receive payments beyond the sixty-month guaranteed period. But equating the *Plaintiff's* named beneficiary's ability to receive payments past the sixty-month period with *Smith's* named beneficiary's ability to receive payments past the sixty-month period is not an appropriate comparison of the rights and options conferred under the Plan. Smith, as the Plan participant, is guaranteed payment until the sixtieth month or his death, whichever comes later. When that happens, all liability of the Fund ceases. Contrariwise, the death of the Plaintiff in no way changes the liability of the Fund in terms of total benefits to be paid or the manner in which they are tendered. If the Plaintiff outlives Smith, she would be entitled to her allotted amount only until the expiration of the sixty months or Smith's death, whichever comes later. There is no reason that her beneficiary cannot likewise collect benefits until the expiration of the sixty months or Smith's death, whichever comes later. The Plan is concerned with the lifespan of Smith, not the lifespan of the Plaintiff. "A domestic relations order shall not be treated as failing to meet the requirements of [§ 1056(d)(3)(D)(i)] solely because such order requires that the payment of benefits be made to an alternate payee . . . in any form in which such benefits may be paid under the plan to the participant (other than in the form of a joint and survivor annuity with respect to the alternate payee and his or her subsequent spouse)." § 1056(d)(3)(E)(i)(III). The DRO does not change the total liability of the Fund and does not require benefits to be paid in a different form or at a different time; it only directs to whom payments will be made and in what percentage.

This flaw in the Trustees' reasoning is fatal to the Fund's argument. The Court cannot say that there is a reasoned explanation for the Trustees' decision, that the Trustees based their decision on a reasonable explanation of the relevant Plan documents, or that the decision encompassed the important aspects of the problem. *See Hess*, 274 F.3d at 461. The Fund has offered no other persuasive reasons as to why the DRO is unqualified. Therefore, the Court finds that the Trustees' decision to deny the payment of benefits because of its determination that the DRO was not qualified was arbitrary and capricious.

**6.      *Whether the Segregation of Funds was Arbitrary and Capricious***

The Fund has also moved for judgment on the administrative record regarding the Plaintiff's contention that the funds were improperly segregated in violation of § 502(a). The Fund argues that the Plan clearly provides that, until the Trustees are presented with a purported QDRO, funds allotted to a beneficiary such as the Plaintiff would be segregated for up to eighteen months, at which point, if the Trustees determined that the DRO was not, in fact qualified, the segregated funds would be payable to the Plan participant, Smith, as if there had been no DRO. The funds would be payable to the beneficiary only upon a final determination that the DRO was qualified.

The Trustees began withholding the Plaintiff's interest in Smith's benefits upon receiving a DRO submitted on May 24, 2016, (prior to the amended DRO now at issue). The relevant period for determination of whether the DRO was qualified or submission of another DRO that was determined to be qualified ended in November 2017. To date, none of these segregated funds have been dispersed either to the Plaintiff or to Smith.

The segregation provision is in accordance with statutory requirements, which provide, in part:

> During any period in which the issue of whether a domestic relations order is a qualified domestic relations order is being determined (by the plan administrator, by a court of competent jurisdiction, or otherwise), the plan administrator shall separately account for the amounts . . . which would have been payable to the alternate payee during such period if the order had been determined to be a qualified domestic relations order.

§ 1056(d)(3)(H)(i).

The Plaintiff has offered no reason why the segregation of funds in compliance with ERISA was improper other than her argument that the DRO at issue was qualified and, therefore, the Fund should have disbursed payment. The decision to continue to segregate the Plaintiff's funds was consistent with the Trustees' decision that the DRO was not qualified. However, the Court has found that the DRO was, in fact, qualified and that the Trustees' decision to the contrary was arbitrary and capricious. Therefore, the Court need not pass on whether the decision to segregate the funds at issue was separately arbitrary and capricious.

## C.    Motion to Dismiss

The Court turns now to the Fund's assertion that ERISA preempts the Plaintiff's state law conversion claim under § 34-24-3-1 of the IAC.  "To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Factual allegations are accepted

as true at the pleading stage, but "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *Adams*, 742 F.3d at 728 (internal citations omitted).

Section 514(a) of ERISA contains a broad preemption provision regarding state laws that "relate to" employee benefit plans. It provides in relevant part:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b).

29 U.S.C. § 1144. The Supreme Court has set forth a two-part test for determining when a claim has been completely preempted by ERISA:

> [I]f an individual, at some point in time, could have brought his claim under ERISA's [civil enforcement provision] § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*See Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 597 (7th Cir. 2008) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)).

Similarly, the Seventh Circuit has set forth three factors for use in determining whether a claim is within the scope of § 502(a) and thus completely preempted:

> [W]hether the plaintiff [is] eligible to bring a claim under that section; whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a); and whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law.

*Klassy v. Physicians Plus Ins. Co.*, 371 F.3d 952 (7th Cir. 2004) (quoting *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1487 (7th Cir. 1996)).

There does not appear to be any dispute that the Plaintiff is a beneficiary within the meaning of ERISA and therefore eligible to bring a claim under § 502(a). The Fund argues that the Plaintiff's cause of action is a claim for benefits subject to ERISA and that her only remedy,

absent demonstration of a separate legal duty on the part of the Fund independent of her ERISA

claim, is through ERISA's enforcement mechanism. The Plaintiff does not appear to allege such

a separate legal duty on the part of the Fund. Further, it seems that the Plaintiff's conversion

claim takes issue with the segregation provision in the Plan. Therefore, on the face of the issue, it

appears that the Plaintiff's conversion claim is preempted. The Plaintiff responds that ERISA's

preemption provision has an exception for QDROs and that the DRO at issue is, in fact,

qualified. *See* 29 U.S.C. § 1144(b)(7) ("Subsection (a) shall not apply to qualified domestic

relations orders . . . ."). Thus, because her claim stems from a QDRO, the Plaintiff argues that

ERISA does not preempt her state law conversion claim. In reply, the Fund argues that the

Plaintiff misapplies the narrow QDRO exception.

Neither party has produced any authority in the Seventh Circuit directly on point. The

Fund argues that district courts within the Seventh Circuit have addressed this issue and found

that ERISA preempts state law claims for conversion. *See Cooney v. Trustees of the Will Cty.

Carpenters, Local 174, Pension Fund*, No. 13-CV-8819, 2016 WL 6833908, at *2 (N.D. Ill.

Nov. 21, 2016) (finding conversion claim implicates plan administration and therefore was

preempted under § 514 because it "related to" an employee benefit plan); *Plummer v. Consol.

City of Indianapolis, Dep't of Waterworks of Consol. City of Indianapolis*, No. 1:03-CV-567,

2004 WL 2278740, at *24 (S.D. Ind. Aug. 17, 2004) (finding conversion claim was really a

claim based on what the plaintiffs believed were improper amendments to ERISA plans and

therefore preempted by ERISA.); *Gordon v. Sedgwick Claims Mgm't Servs., Inc.*, No. 1:08-CV-

883, 2010 WL 1381655 n.4 (S.D. Ind. Mar. 30, 2010) (finding that "[c]ommon law causes of

action . . . which are based on an alleged improper processing of a claim for benefits under an

employee benefit plan are preempted by ERISA"). The Fund asserts that because ERISA

preempts state law claims such as conversion, in order to adequately plead a claim of conversion, the Plaintiff had to allege an independent legal duty to the plan participant, which she has not done.

None of the cases to which the Fund cites involve QDROs. In fact, neither party has cited any authority regarding state law conversion claims pertaining to QDROs in the context of ERISA preemption. The Court has found at least two other instances, albeit outside of the Seventh Circuit, in which a court found a conversion claim to be preempted despite its relation to a QDRO: *U.S. Renal Care, Inc. v. Wellspan Health*, No. 1:14-CV-2257, 2015 WL 5286638 (M.D. Pa. Sept. 10, 2015) ("Plaintiff's state law conversion claim is in actuality a claim for benefits under ERISA plan. As such, the claim clearly 'relates to' an ERISA plan and is preempted by § 514(a) of ERISA."); *Dorn v. Int'l Broth. Of Elec. Workers*, 211 F.3d 938 (5th Cir. 2000) ("A state law claim, such as [the plaintiff's] claim for conversion, addressing the right to receive benefits under the terms of an ERISA plan necessarily 'relates to' an ERISA plan and is thus preempted.").

In order to dispose of the Fund's Motion to Dismiss, the Court must first determine whether the Plaintiff's proffered DRO is, in fact, qualified. *See Seaman v. Johnson*, 91 F. App'x 465, 469 (6th Cir. 2004) (noting that "where the proper distribution of assets is arguably controlled by a state-court domestic relations order, the threshold question is whether that order represents a QDRO as defined by 29 U.S.C. § 1056 of ERISA"). As discussed above, the Court finds that the DRO does not require the plan to provide any type of form or benefit, or any option, not otherwise provided under the plan, and it is qualified.

Having determined that the DRO is qualified, the Court must consider whether the Plaintiff's conversion claim falls within the QDRO exception to preemption under § 514(a). The

Supreme Court has found that some claims that touch on ERISA are "too tenuous, remote, or peripheral" to warrant a finding that the state law "relates to" the plan "as is the case with many laws of general application." *District of Columbia v. Greater Wash. Bd. of Trade*, 133 S. Ct. 580, 583 n.1 (1992). "And several courts declare that if there is no effect on the relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries— there is no preemption." *Pleasant View Luther Home, Inc. v. Travelers Plan Adm'rs, Inc.*, No. 92 C 7784, 1995 WL 66350, at *2 (N.D. Ill. Feb. 9, 1995) (quotation omitted). In this case, the dispute is "between a fiduciary and a beneficiary; a relationship which is of primary concern under ERISA," which militates in favor of preemption. *Cent. States, SE and SW Areas Health and Welfare Fund v. Neurobehavioral Assoc., P.A.*, 53 F.3d 172, 173–74 (7th Cir. 1995).

"Claimants cannot simply obtain relief by dressing up an ERISA benefits claim in the [garb] of a state law tort." *Jagar v. Jagar*, No. C-09-1455, 2009 WL 4251176, at *2–3 (N.D. Cal. Nov. 23, 2009) (quoting *Dishman v. Unum Life Ins. Co.*, 269 F.2d 974, 983 (9th Cir. 2001) (finding claim that benefits were wrongfully withheld was preempted)). "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692 (6th Cir. 2005) (quoting *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991)); *Powell v. Chesapeake & Potomac Tel. Co. of Va.*, 780 F.2d 419, 422 (4th Cir. 1985) ("To the extent that ERISA redresses the mishandling of benefits claims or other maladministration of employee benefit plans, it preempts analogous causes of action, whatever their form or label under state law.") (citing *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1215–16 (8th Cir. 1981)).

"However [ERISA's preemption provision] might otherwise have been read, the Supreme Court has construed it to preclude state claims to enforce rights under an ERISA plan or obtain damages for the wrongful withholding of those rights . . . ." *Turner v. Fallon Cmty. Health Plan, Inc.*, 127 F.3d 196, 199 (1st Cir. 1997) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)); *see also Speer v. Prudential Ins. Co. of Am.*, 645 F. App'x 821, 824 (10th Cir. 2016) (affirming denial of motion to remand to state court where the plaintiff sought recovery of benefits arising from an ERISA plan); *cf. Wright v. Gen. Motors Corp.*, 262 F.3d 610, 615 (6th Cir. 2001) (finding no preemption because the basis of the plaintiff's lawsuit was not "claiming wrongful withholding of ERISA covered plan benefits . . ."). "In other words, ERISA preempts state remedies for what is in essence a plan administrator's refusal to pay allegedly promised benefits." *Humphrey v. Paul Revere Life Ins. Co.* No. 11-11298, 2012 WL 928432, at *2 (D. Mass. Mar. 15, 2012) (citation omitted).

Because this dispute between a beneficiary and a fiduciary is, at bottom, a claim for wrongfully withheld benefits, the Court finds that the Plaintiff's state law claim for conversion is preempted.

## REMEDY

"[H]aving found that the [Fund] acted arbitrarily and capriciously in denying [the Plaintiff] benefits, the question is whether the case should be remanded for further findings and explanations or whether benefits should be directly awarded." *Grise v. Flair Interiors, Inc. Emp. Benefit Plan*, No. 1:12-CV-422, 2013 WL 1287328, at *10 (N.D. Ind. Mar. 27, 2013) (citing *Powers v. Nat'l Rural Letters Carriers' Ass'n Long-Term Disability Income Plan*, 4:07-cv-62, 2009 WL 1259378, at *9 (S.D. Ind. May 5, 2009)).

"When a plan administrator fails to provide adequate reasoning for its determination, our typical remedy is to remand to the plan administrator for further findings or explanation." *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009) (citations omitted). A direct award of benefits is appropriate only in "the rare case where the record . . . contains such powerfully persuasive evidence that the only determination the plan administrator could reasonably make is that the claimant is" entitled to benefits. *Id.*

In this case, there is no evidence before the Court that was not before the Trustees when they decided that the DRO was not qualified. Whether a DRO is qualified is a question of law that the Court may resolve. There is nothing further for the Trustees to consider on remand, and the Court will direct the Fund to remit to the Plaintiff the segregated amounts owed to her. There is insufficient evidence before the Court regarding the extent to which the Plaintiff suffered other damages, and the case will remain pending on that issue.

**CONCLUSION**

Accordingly, the Court DENIES the Fund's Motion to Transfer Case [ECF No. 47], GRANTS the Fund's Motion to Dismiss [ECF No. 42] the Plaintiff's state law conversion claim, and DENIES the Fund's Motion for Judgment on the Administrative Record [ECF No. 7]. The Court finds in favor of the Plaintiff as to her entitlement to the segregated funds, and the Fund is DIRECTED to immediately remit benefits to the Plaintiff in accordance with the qualified DRO. This case remains pending as to the Plaintiff's claim for damages. A telephonic status conference will be set by separate order.

SO ORDERED on June 28, 2018.

           s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT